## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

A N D CARTING, LLC,             :
                                   :

                  **Plaintiff,**    :
                                   :

    **vs.**                        :  **No.**  _____
                                   :

**FINOCCHIO BROTHERS, INC.,**  :
**FINOCCHIO BROS. CARTING OF**  :
**GREENWICH, INC.,**  :
**FINOCCHIO BROTHERS CARTING CORP.,**  :
**FINOCCHIO CARTING, LLC,**  :
**FINOCCHIO DISPOSAL, LLC,**  :
**FINOCCHIO BROS. OF WILTON, LLC,**  :
**T.P. CARTING, LLC,**  :
**YOUR NEW HAULER, INC.,**  :
**ROBERT FINOCCHIO, SR.,**  :
**ROBERT FINOCCHIO, JR.,**  :
**THOMAS P. FINOCCHIO,**  :
**KIMBERLY FINOCCHIO, and**  :
**DANA FINOCCHIO, a/k/a DANA RAO,**  :
                                 :
                **Defendants.**  :  **FEBRUARY 1, 2007**

- - - - - - - - - - - - - -- - - - - - - - - - - - - - - x

## VERIFIED COMPLAINT

The plaintiff, by its undersigned counsel, demanding a trial by jury, for its Verified

Complaint, alleges as follows:

## JURISDICTION AND VENUE

1.    This action arises under the antitrust laws of the United States, more par-

ticularly Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Sections 4 and

16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  Accordingly, this Court has federal

question jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§ 1331 and 1337.

2.      This action includes statutory claims under the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-1 et seq., the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 et seq., the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq., and state common law claims, all of which claims arise from the same facts and circumstances as the federal statutory claims.  Accordingly, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3.      Venue lies in the District of Connecticut in that one or more defendants re-side within the District of Connecticut, and a substantial part of the events giving rise to claims asserted in this action occurred within the District of Connecticut.  Accordingly, venue is proper pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391.

## **PARTIES**

4.      Plaintiff A N D Carting, LLC (hereinafter "A N D Carting"), is a limited liabil-ity company organized and existing under the laws of the State of Connecticut, and maintains its offices at 12 Cliffview Drive, Norwalk, Connecticut; A N D Carting is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

5.      Defendant Finocchio Brothers, Inc. ("Finocchio Bros.") is a corporation or-ganized under the laws of the State of Connecticut, and registered as a foreign corpora-

tion under the laws of the State of New York; Finocchio Bros. maintains business addresses of 65 Davenport Street, Stamford, Connecticut 06902, and 205 Greenwich Avenue, Stamford, Connecticut; Finocchio Bros. is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut, Westchester County, New York, and in New York City, New York.

7.     Defendant Finocchio Bros. Carting of Greenwich, Inc. ("Finocchio-Greenwich") is a corporation organized under the laws of the State of Connecticut, with a business address of 205 Greenwich Avenue, Stamford, Connecticut 06902; Finocchio-Greenwich is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

7.     Defendant Finocchio Brothers Carting Corp. ("Finocchio Bros. Carting") is a corporation organized under the laws of the State of Connecticut, with a business address of 65 Davenport Street, Stamford, Connecticut 06902; Finocchio Bros. Carting is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

8.     Defendant Finocchio Carting, LLC ("Finocchio Carting") is a limited liability company organized under the laws of the State of Connecticut, with a business address of 475 Fairfield Avenue, Building 4, Stamford, Connecticut 06902; Finocchio Carting is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

9.     Defendant Finocchio Disposal, LLC ("Finocchio Disposal") is a limited liability company organized under the laws of the State of Connecticut, with a business address of 475 Fairfield Avenue, Building 4, Stamford, Connecticut 06902; Finocchio Disposal is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

10.     Defendant Finocchio Bros. of Wilton, Inc. ("Finocchio-Wilton") is a corporation organized under the laws of the State of Connecticut, with a business address of 65 Davenport Street, Stamford, Connecticut 06902; Finocchio-Wilton is in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

11.     Defendant T.P. Carting, LLC ("T.P. Carting"), is a limited liability company organized under the laws of the State of Connecticut, with a business address of 425 Fairfield Avenue, Building 4, Stamford, CT 06902; at all relevant times herein, T.P. Carting was in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.  Upon information and belief, T.P. Carting was dissolved on or about July 5, 2005;

12.     Defendant Your New Hauler, Inc. ("Your New Hauler") is a corporation organized and existing under the laws of the State of Connecticut.

13.     Upon information and belief, Your New Hauler does not transact business, but rather, the corporation was formed to enable one or more of the other defendants to

use the corporate name "Your New Hauler" as an artifice to deceive prospective customers into believing that such customers' their existing garbage hauler—in many cases plaintiff A N D Carting—has discontinued doing business and transferred their customers to one or the defendant garbage haulers.

14.     Upon information and belief, defendant Robert Finocchio, Sr. is an individual who resides at 10 Argentine Way, Norwalk, Connecticut, and owns, is a shareholder, member, officer or director of, or directly or indirectly controls or participates in the control of one or more of the following entities:  Finocchio Bros., Finocchio-Greenwich, Finocchio Bros. Carting, Finocchio Carting, Finocchio Disposal, Finocchio-Wilton, T.P. Carting, and Your New Hauler (collectively, the "Finocchio Entities").

15.     Upon information and belief, defendant Robert Finocchio, Sr. has conducted business under the fictitious name "Finocchio Carting," which, upon information and belief, is a sole proprietorship that was in the business of collecting, hauling and disposing of residential and commercial garbage in Fairfield County, Connecticut.

16.     Defendant Thomas P. Finocchio, Jr. is an individual who resides at 35 High Point Circle, Ryebrook, New York.  Thomas P. Finocchio, Jr. is the brother of Robert Finocchio, Sr.

17.     Upon information and belief, defendant Thomas P. Finocchio, Jr. owns, is a principal of, or directly or indirectly controls one or more of the Finocchio Entities.

18.     Upon information and belief, defendant Robert Finocchio, Jr. is an individual who resides in the State of Florida;  Robert Finocchio, Jr. is the son of Robert Finocchio, Sr.

19.     Upon information and belief, defendant Robert Finocchio, Jr. owns, is a shareholder, member, officer or director of, or directly or indirectly controls or participates in the control of one or more of the Finocchio Entities.

20.     Upon information and belief, defendant Kimberly Finocchio is an individual who resides at 17 Spinning Wheel Lane, Monroe, Connecticut, and is employed by and has acted as an agent of one or more of the Finocchio Entities.  Kimberly Finocchio is the daughter of Robert Finocchio, Sr.

21.     Upon information and belief, defendant Dana Finocchio, also known as Dana Rao, is an individual residing at 1832 Cardamon Drive, New Port Richey, Florida, and owns, is a shareholder, member, officer or director of, or directly or indirectly controls or participates in the control of one or more of the Finocchio Entities.  Dana Finocchio is the daughter of Robert Finocchio Sr.

22.     At all relevant times herein, the individual defendants, acted in their individual capacities and in their capacities as members, principals, employees, agents or representatives of the Finocchio Entities.

23.     The Finocchio Entities conduct business out of the same business offices located at and known as either 205 Greenwich Avenue, Stamford, Connecticut, or 65 Davenport Street, Stamford, Connecticut.

24.     The Finocchio Entities share each other's employees and vehicles in the transaction of business, and share telephone numbers, including, for example, 203-869-9099, 203-356-0241 and 203-762-8627, in connection with their business operations in Connecticut and in New York.

## FACTUAL ALLEGATIONS

**I.     BACKGROUND.**

25.     Prior to October 2002, Finocchio Carting operated a garbage collection business in the Town of Darien, Connecticut, and its customer list contained a substantial number of residential and commercial customers, or "stops," within the Town of Darien.

26.     Prior to October 2002, T.P. Carting operated a garbage collection business in the Town of Darien, Connecticut, and its customer list contained a substantial number of residential stops within the Town of Darien.

27.     A N D Carting was organized in September 2002 for the purpose of acquiring the assets of T.P. Carting and Finocchio Carting, and operating a garbage collection business initially in Darien, Connecticut.

## II.   THE T.P. CARTING ASSET SALE AGREEMENT.

28.   In September 2002, A N D Carting and T.P. Carting entered into a transaction whereby T.P. Carting sold all of its tangible and intangible assets to A N D Carting, including, without limitation, T.P. Carting's customer list and accounts (the "T.P. Carting Agreement" or the "T.P. Carting Sale").

29.   The T.P. Carting Agreement included a Noncompetition and Nondisclosure Agreement (the "Rao Noncompetition Agreement"), which provides:

> "Dana Rao covenants and agrees that for a period of ten (10) years from the date hereof, she will not, within the Town of Darien, Fairfield County, Connecticut, directly or indirectly own, operate, manage, join, control or participate in the ownership, management, operation or control of, or be paid or employed by, or associated in any manner with, or have a substantial equity ownership in, or otherwise become associated with or provide assistance to, as an employee, consultant, director, officer, shareholder, partner, agent, associate, principal, representative, or in any other capacity, any business engaged in the commercial or residential garbage business."

30.   As consideration for the T.P. Carting Agreement, A N D Carting paid a purchase price in the amount of $231,000.00, which included cash and a promissory note payable to T.P. Carting and Dana Rao in the principal amount of $163,427.00 (the "Rao Note"), and other consideration.

31.   As security for the Rao Note, A N D Carting provided a personal guaranty of the principals of A N D Carting and others, and a mortgage (the "Rao Mortgage") on certain real property owned by one or more of the guarantors.

### III.   THE FINOCCHIO CARTING ASSET SALE AGREEMENT.

32.   In October 2002, A N D Carting and Finocchio Carting entered into a transaction whereby Finocchio Carting sold all of its tangible and intangible assets to A N D Carting, including, without limitation, Finocchio Carting's customer list and accounts (the "Finocchio Carting Agreement" or the "Finocchio Carting Sale").

33.   The Finocchio Carting Agreement included a Noncompetition and Nondisclosure Agreement (the "Finocchio Noncompetition Agreement"), which provides:

> "Robert Finocchio, Sr. covenants and agrees that for a period of ten (10) years from the date hereof, he will not, within the Town of Darien, Fairfield County, Connecticut, directly or indirectly own, operate, manage, join, control or participate in the ownership, management, operation or control of, or be paid or employed by, or associated in any manner with, or have a substantial equity ownership in, or otherwise become associated with or provide assistance to, as an employee, consultant, director, officer, shareholder, partner, agent, associate, principal, representative, or in any other capacity, any business engaged in the commercial or residential garbage business."

34.   The Finocchio Carting Agreement included a written right of first refusal (the "Finocchio Right of First Refusal"), which conveyed to A N D Carting, LLC,

> "the right of first refusal to purchase the customer route located in Greenwich, Connecticut when and if Finocchio Carting, LLC determines to sell said route.  This right is conditioned upon the aforementioned parties' agreement to a mutually acceptable price for the purchase of said route, which shall be not less than the value of said route, which is represented by an average of three independent appraisers.  This Agreement shall be null and void if said Route is transferred to any or all of the children of Robert Finocchio, Sr."

35.     As consideration for the Finocchio Sale, A N D Carting, LLC paid a purchase price in the amount of $1,469,000.00, which included cash and a promissory note in the principal amount of $875,002.00, payable to Finocchio Carting and Robert Finocchio Sr. (the "Finocchio Note"), and other consideration.

36.     As security for the Finocchio Note, A N D Carting provided a personal guaranty of the principals of A N D Carting and others, and a mortgage (the "Finocchio Mortgage") on certain real property owned by one or more of the guarantors.

### IV.     DISPUTE RESOLUTION AND THE ARBITRATION PROVISION.

37.     Paragraph 8(c) of both the Finocchio Carting Agreement and the T.P. Carting Agreement provides:

> **Setoff**.  Upon prior written notification by Buyer, and in addition to their other rights and remedies under this Agreement or the Subsidiary Documents, Buyer shall be entitled to recover any damages, indemnification, adjustments or credits due under this Agreement or under any Subsidiary Document or pursuant to any other financial transaction between any of the parties hereto by setting off such amounts against any payment due to the Seller, the Members, employment agreements, or against any other amounts due from Buyer or from any company controlling or under common control with the Buyer.  In the event Seller and Members disagree with the amount of the setoff, Buyer shall make payment of the disputed amount to Seller's attorney, Kevin F. Collins trustee, to be held in escrow pending arbitration or litigation of the dispute.

38.     Paragraph 9(*l*)(4) of the T.P. Carting Agreement and Finocchio Carting Agreement provides, "The parties agree to negotiate in good faith and use their respective best efforts to prevent and/or resolve any . . . dispute[s]."

39.     The Riders to the T.P. Carting Agreement and the Finocchio Carting Agreement each contained a provision whereby disputes arising from the agreements would be submitted to binding arbitration.

40.     Paragraph 3(c) of the Rider to the T.P. Carting Agreement and the Finocchio Carting Agreement provides that arbitration shall be conducted in a manner consistent with the rules of the American Arbitration Association (the "AAA").

41.     Rule R-21 of the AAA Commercial Arbitration Rules provides as follows:

R-21.  Exchange of Information

(a)  At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct

i)  the production of documents and other information, and

ii)  the identification of any witnesses to be called.

(b)  At least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing.

(c)  The arbitrator is authorized to resolve any disputes concerning the exchange of information.

## V.     ROBERT FINOCCHIO AND FINOCCHIO CARTING BREACH THE RIGHT OF FIRST REFUSAL.

42.     Upon information and belief, in or around late 2004, Robert Finocchio Sr. and Finocchio Carting entered into a transaction whereby they conveyed to Robert Finocchio, Sr.'s brother, defendant Thomas Finocchio, some 200 stops that were part of

Robert Finocchio Sr.'s Greenwich, Connecticut, route, in exchange for payment of the sum of $200,000.00 to Robert Finocchio Sr.'s son.

43.     Robert Finocchio, Sr. and Finocchio Carting did not inform A N D Carting, LLC of their intention to convey the approximately 200 Greenwich stops to Thomas Finocchio prior to completing the transaction.

44.     Robert Finocchio Sr. and Finocchio Carting thereby denied A N D Carting the opportunity to exercise its right purchase the Greenwich stops—a right for which A N D Carting, LLC had paid valuable consideration.

45.     By failing to allow the plaintiff to purchase the Greenwich stops, Robert Finocchio, Sr. and Finocchio Carting breached the Finocchio Right of First Refusal.

**VI.     ROBERT FINOCCHIO, SR. AND FINOCCHIO CARTING BREACH THE ARBITRATION PROVISION, THE CONTRACTUAL OBLIGATION TO NEGOTIATE IN GOOD FAITH, AND THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND REFUSE TO USE THEIR BEST EFFORTS TO RESOLVE THIS DISPUTE.**

46.     After learning that Robert Finocchio, Sr. and Finocchio Carting had breached the Right of First Refusal, A N D Carting notified Mr. Finocchio and Finocchio Carting by letter dated May 12, 2005, that the sale of the Greenwich stops constituted a breach of the Right of First Refusal, and that the breach had caused damages to A N D Carting in an amount that exceeds the remaining balance due to Mr. Finocchio under the Finocchio Note.

47.     The letter also informed Mr. Finocchio and Finocchio Carting that A N D Carting would make future monthly payments to Attorney Collins, in accordance with the Finocchio Agreement.

48.     In accordance with the Finocchio Agreement and the May 12, 2005 letter to Mr. Finocchio and Finocchio Carting, A N D tendered the monthly payments for May 2005 and June 2005 to Attorney Collins.

49.     Instead of holding those two payments in escrow, Attorney Collins rejected the payments and returned them to A N D Carting's counsel, with a letter advising that Robert Finocchio, Sr. had disputed the claim that he had breached the Right of First Refusal.

50.     In the same letter, Attorney Collins stated that he refused to act as escrow agent.

51.     Thereafter, Robert Finocchio, Sr. and Finocchio Carting refused to negotiate in good faith and refused to use their best efforts to resolve the dispute concerning the transfer of the Greenwich stops in one or more of the following ways:

        a.      Although Mr. Finocchio admitted that he had conveyed a significant number of his Greenwich stops to his brother, defendant Thomas Finocchio, Robert Finocchio, Sr. refused to explain the transaction in sufficient detail to enable A N D Carting to determine whether the

transaction did or did not constitute a breach of the Right of First Refusal.

b.    Although Robert Finocchio, Sr. admitted that closing documents were prepared for the transaction by which he conveyed the Greenwich stops to defendant Thomas Finocchio, Robert Finocchio, Sr. refused to produce them, and claimed, through his attorney, that the transaction was structured in a manner that would avoid a "$50,000 tax liability" to Robert Finocchio, Sr. and his son, defendant Robert Finocchio, Jr., by having Thomas Finocchio make a payment of $200,000.00 to Robert Finocchio, Jr.

c.    Although Robert Finocchio, Sr. and Finocchio Carting purported to agree to submit the dispute over the Right of First Refusal to arbitration, they refused to provide A N D Carting with any documents related to the conveyance of the Greenwich stops to Thomas Finocchio, even after the arbitrator directed him to do so.

d.    In addition, A N D Carting requested Robert Finocchio, Sr. and Finocchio Carting to produce a list of  their Greenwich customers prior to and after the transaction in which they transferred the Greenwich stops to defendant Thomas Finocchio, or, in the alternative, to authorize A N D Carting to obtain the lists from the database

service that maintains customer lists and billing data for various Finocchio Entities;

e.      As with the documents related to the conveyance of the Greenwich stops, Robert Finocchio, Sr. and Finocchio Carting have failed and refused to produce the requested customer information, and have failed and refused to authorize A N D Carting to obtain the information from the Finocchio Entities' database service.

f.      As a result of Robert Finocchio, Sr.'s refusal to produce relevant and pertinent documents—despite the arbitrator's direction to do so—Robert Finocchio, Sr. and Finocchio Carting have frustrated totally the arbitration process to the point at which further attempts to proceed with the arbitration would be futile.

52.      By refusing to cooperate in the arbitration process, Robert Finocchio, Sr. and Finocchio Carting have breached the Finocchio Agreement and the Arbitration provision contained in the Rider to the Agreement.

### VII.      KIMBERLY FINOCCHIO'S THEFT, UNAUTHORIZED DISCLOSURE OF AND UNLAWFUL USE OF A N D CARTING'S CUSTOMER LIST

53.      For several years prior to the Finocchio Asset Sale and the T.P. Carting Sale, Kimberly Finocchio provided bookkeeping and billing services for Finocchio Carting, T.P. Carting, and some or all of the other Finocchio Entities.

54.    At the time the T.P. Carting Sale and the Finocchio Carting Sale closed, Kimberly Finocchio requested, and A N D Carting agreed, that Kimberly Finocchio would perform bookkeeping and billing services for A N D Carting.

55.    Upon information and belief, based on her experience in the garbage collection business, Kimberly Finocchio was and is aware that the customer lists that A N D Carting had purchased from Finocchio Carting and T.P. Carting were trade secrets, in that the lists consisted of information that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and were the subject of efforts that were reasonable under the circumstances to maintain their security.

56.    As bookkeeper and billing manager, Kimberly Finocchio was aware that A N D Carting's customer list and the information contained therein was to remain confidential pursuant to the Finocchio Carting Agreement and the T.P. Carting Agreement, and that she was not permitted to disclose the list or its contents to, or to use the information contained in the list for the benefit of, herself or any of the other defendants.

57.    Indeed, Kimberly Finocchio was aware that the Finocchio Agreement and the T.P. Carting Agreement included Noncompetition and Nondisclosure Agreements, and that the sale prices in the two transactions were based generally on the monthly fees charged to customers as listed in the customer lists attached to each Agreement.

- 16 -

58.     During the time that Kimberly Finocchio performed services for A N D Carting, she worked in the offices of A N D Carting, which were located in the home of one of the principals of A N D Carting, and at the same time, Kimberly Finocchio performed bookkeeping services for one or more of the Finocchio Entities.

59.     Without the knowledge or consent of A N D Carting, Kimberly Finocchio retained electronic and/or hard copies of the customer list and pricing information that A N D Carting had purchased from Finocchio Carting and T.P. Carting—knowing that the list constituted a confidential trade secret.

60.     On October 31, 2003—13 months after the Finocchio Carting Agreement and the T.P. Carting Agreement had closed—the relationship between Kimberly Finocchio and A N D Carting was severed, and thereafter, Kimberly Finocchio no longer performed bookkeeping services in the home of the A N D Carting principal.

61.     Upon information and belief, on or before October 31, 2003, Kimberly Finocchio removed—willfully and by improper means—one or more copies of the customer lists that A N D Carting had purchased from Finocchio Carting and T.P. Carting, and retained possession of them.

62.     In or around July, 2006, Kimberly Finocchio—willfully and without the authorization of A N D Carting—began misappropriating the customer lists and pricing information by sending fliers to and calling customers of A N D Carting, advertising gar-

bage collection services at deeply discounted prices, and offered lengthy periods of garbage pickup and other services free of charge.

63.     As part of her deliberate scheme to misappropriate A N D Carting's customer list, Kimberly Finocchio sent fliers to A N D Carting's Darien customers, and placed advertisements in local Darien newspapers soliciting customers purportedly on behalf of defendants Your New Hauler and Finocchio Bros. Carting.

64.     The fliers and advertisements contained such statements as "CALL KIM FOR YOUR MONTHLY RATE," and "PLEASE CALL KIM FINOCCHIO."

65.     Upon information and belief, on July 22, 2006, Kimberly Finocchio, acting on behalf of one or more of the defendants, mailed fliers to most or all of the A N D Carting customer whose names, addresses, and monthly rates were contained in the customer lists that A N D Carting had purchased from Finocchio Carting and T.P. Carting pursuant to the Finocchio Carting Agreement and the T.P. Carting Agreement—both of which lists constituted trade secrets.

66.     In addition to using the names and addresses of A N D Carting's customers, upon information and belief, Kimberly Finocchio used the same electronic data file that she unlawfully had copied and stolen from A N D Carting to print the address labels she used to mail the filers.

67.     If that was not enough, Kimberly Finocchio also used the pricing information she misappropriated from A N D Carting in offering discounts and other incentives to A N D Carting's customers.

### VIII.    THE FINOCCHIO ENTITIES UNLAWFULLY SOLICIT A N D CARTING CUSTOMERS IN VIOLATION OF THE NONCOMPETITION AGREEMENTS.

68.     The Finocchio Entities have conspired to breach the Finocchio Noncompetition Agreement and the Rao Noncompetition Agreement by engaging Defendants Kimberly Finocchio and Cerreta, who have committed the following unlawful conduct on behalf of Finocchio Carting, T.P. Carting, and one or more of the Finocchio Entitles:

69.     Kimberly Finocchio, willfully and maliciously using the confidential customer list and pricing information that A N D Carting had purchased from Finocchio Carting and T.P. Carting, knowing that such customer list and pricing information was confidential, proprietary property of A N D Carting, solicited A N D Carting's Darien customers by sending fliers and making telephone calls to those customers.

70.     Kimberly Finocchio, has used and continues to use the corporate name, "Your New Hauler, Inc." in solicitation fliers in a manner that fraudulently implies that A N D Carting is no longer in business, when in fact, A N D Carting has continued to operate its business in Darien.

71.     Kimberly Finocchio, has offered and continues to offer free garbage hauling and other services at prices so low as to be below average cost and predatory, with

the intent of driving A N D Carting out of business, and later recouping the losses the Finocchio Entities would sustain as a result of the predatory pricing.

72.     The Finocchio Entities have employed one Ralph Anthony Cerreta ("Cerreta")—a convicted felon, whose criminal history includes a conviction of federal criminal charges of felony fraud and false statement in 2001, arising from his role in the management of a garbage hauling company indicted in New York in 1990 for state antitrust violations.

73.     The Finocchio Entities have solicited A N D Carting's Darien customers in breach of the Noncompetition Agreements contained in the Finocchio Sale Agreement and the T.P. Carting Agreement.

74.     Kimberly Finocchio and Cerreta, have contacted A N D Carting claiming that certain A N D Carting's customers had decided to terminate A N D Carting's garbage collection services, when in fact, the A N D Carting customers had not terminated such services, and were not aware that Kimberly Finocchio or Cerreta had contacted A N D Carting.

**IX.   THE DEFENDANTS ENGAGE IN PREDATORY PRICING
        WITH THE OBJECTIVE OF DESTROYING A N D
        CARTING'S BUSINESS.**

75.     Kimberly Finocchio and Cerreta, acting on behalf of the Finocchio Entities, have engaged in predatory pricing by offering to A N D Carting's customers in Darien,

and in other towns in Fairfield County, Connecticut, extended periods—in some cases six months or more—of free garbage hauling and other services.

76.     Kimberly Finocchio and Cerreta, acting on behalf of the Finocchio entities, also have offered prices for garbage hauling services that are below cost for legitimate garbage haulers in the Darien market, and in other markets in which A N D Carting and other private garbage haulers do business.

77.     Upon information and belief, Kimberly Finocchio and Cerreta, acting on behalf of the Finocchio Entities, intend to recoup any losses they incur by increasing prices after A N D Carting no longer does business in Darien and nearby towns.

78.     The defendants intend such predatory pricing to have the effect of eliminating A N D Carting as a competitor in the Darien market, and thereby reduce fair competition, all resulting in higher prices to residential and commercial customers in that market.

79.     Upon information and belief, the defendants are able to absorb the temporary losses they have incurred and will incur as a result of their predatory pricing because the Finocchio Entities already hold a substantial market share in other markets in Fairfield and Westchester Counties, and in New York City.

**X.      A N D CARTING HAS SUFFERED AND WILL CONTINUE
         TO SUFFER SUBSTANTIAL DAMAGES AS A RESULT OF
         THE DEFENDANTS' UNLAWFUL CONDUCT.**

80.     As a result of the unlawful conduct of the Finocchio Entities, Robert Finocchio, Sr., Robert Finocchio, Jr., Thomas Finocchio and Dana Finocchio, also known as Dana Rao, A N D Carting has been damaged in one or more of the following ways:

> a.      A N D Carting has been denied the economic benefit of acquiring Robert Finocchio, Sr.'s Greenwich stops, in breach of the Right of First Refusal;

> b.      A N D Carting has lost substantial profits from its Darien stops as a result of the loss of dozens of customers in Darien, in breach of the Finocchio and Rao Noncompetition Agreements;

> c.      A N D Carting, in an attempt to remain in business, has been forced to reduce its pricing to levels too low to cover its overhead and direct costs for customers in Darien that A N D has been able to retain;

> d.      The loss of revenue resulting from the Finocchio Entities' unlawful conduct has rendered A N D Carting unable to pay to the Town of Darien the required tipping fee—the fee charged by the Town to dump garbage originating in Darien at the Town transfer station—

which has resulted in the Town of Darien prohibiting A N D Carting from using the Town transfer station;

e.    A N D Carting has suffered damage to its reputation and goodwill as a result of false and/or misleading statements made by Kimberly Finocchio, Cerreta, and possibly others acting on behalf of the Finocchio entities, concerning the status of A N D Carting's business;

f.    If furtherance of the defendants' objective of destroying A N D Carting, Finocchio Carting and T.P. Carting, by their unlawful conduct, have rendered A N D Carting unable to pay the monthly payments on the Finocchio Note and the Rao Note, and have commenced in the Connecticut Superior Court foreclosure actions against A N D Carting and the guarantors of the Finocchio Note and the Rao Note, seeking to enforce the notes, guarantees and mortgages.

81.    Unless the Court enjoins the Finocchio Entities from further breaches of the Noncompetition Agreements, further use of A N D Carting's customer lists and pricing information, and further predatory pricing, A N D Carting will no longer be able to remain a viable business, and will fail.

82.    A N D Carting has no adequate remedy at law.

_____

## COUNT ONE
## VIOLATION OF CONNECTICUT TRADE SECRETS ACT

83.     Paragraphs 1 through 82 above are incorporated in this Count One, with the same force and effect as if fully set forth herein.

84.     The actions of the defendants constitute a violation of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50 et seq.

85.     Pursuant to Conn. Gen. Stat. § 35-52, the A N D Carting is entitled to preliminary and permanent injunctions prohibiting the Finocchio Entities and the individual defendants from continuing to use A N D Carting's customer list and pricing information.

86.     In addition to injunctive relief, pursuant to Conn. Gen. Stat. § 35-53(a), A N D Carting is entitled to recover damages in addition to or in lieu of injunctive relief, for the actual loss caused by the defendants' misappropriation of A N D Carting's customer list and pricing information.

87.     In addition, pursuant to Conn. Gen. Stat. § 35-53(a), A N D Carting is entitled to recover for the unjust enrichment caused by the defendants' misappropriation of A N D Carting's customer list.

88.     In addition, pursuant to Conn. Gen. Stat. § 35-53(a), A N D Carting is entitled to recover punitive damages in amount not exceeding twice any award made under subsection (a) of Con. Gen. Stat. § 35-53, and reasonable attorneys' fees.

## COUNT TWO
## PREDATORY PRICING IN VIOLATION OF THE
## SHERMAN ANTITRUST ACT

89.     Paragraphs 1 through 82 above are incorporated in this Count Two, with the same force and effect as if fully set forth herein.

90.     The pricing being offered by Kimberly Finocchio and Cerreta on behalf of the Finocchio Entities constitutes predatory pricing, in that the prices being offered to A N D Carting's customers is below the average cost to provide garbage hauling and other services.

91.     The predatory pricing engaged in by the defendants is intended to drive A N D Carting out of business, and thereby eliminate competition in the Darien market.

92.     The defendants' conduct constitutes an ongoing violation section 2 of the Sherman Act, 15 U.S.C. § 2.

93.     Pursuant to 15 U.S.C. § 15, A N D Carting is entitled to recover treble damages, reasonable attorneys' fees, costs and interest resulting from the defendants' predatory pricing, which damages include, but are not limited to,

> a.      lost revenues and profits resulting from the loss of customers in the Darien market;

> b.      damages resulting from the A N D Carting inability to make the Finocchio Note payments and the Rao Note Payments, and the costs, including attorneys' fees and expenses, to defend the fore-

closure actions that the defendants have commenced in the Connecticut Superior Court; and

c.      damage to A N D Carting's business reputation and goodwill in the Darien market.

94.     Pursuant to 15 U.S.C. § 26, A N D Carting is entitled to injunctive relief in the form of temporary and permanent injunctions prohibiting the defendants from engaging in predatory pricing or otherwise violating the federal antitrust laws.

### COUNT THREE
### PREDATORY PRICING IN VIOLATION OF THE
### CONNECTICUT ANTITRUST ACT

95.     Paragraphs 1 through 82 above are incorporated in this Count Three, with the same force and effect as if fully set forth herein.

96.     The pricing being offered by Kimberly Finocchio and Cerreta on behalf of the Finocchio Entities constitutes predatory pricing, in that the prices being offered to A N D Carting's customers is below the average cost to provide garbage hauling and other services.

97.     The predatory pricing engaged in by the defendants is intended to drive A N D Carting out of business, and thereby eliminate competition in the Darien market.

98.    The defendants' conduct constitutes an ongoing violation of the Connecticut Antitrust Act, Conn. Gen. Stat. §§ 35-24 et seq., specifically Conn. Gen. Stat. § 35-29.

99.    Pursuant to Conn. Gen. Stat § 35-35, A N D Carting is entitled to recover treble damages, reasonable attorneys' fees, and costs resulting from the defendants' predatory pricing, which damages include, but are not limited to,

   a.    lost revenues and profits resulting from the loss of customers in the Darien market;

   b.    damages resulting from the A N D Carting inability to make the Finocchio Note payments and the Rao Note Payments, and the costs, including attorneys' fees and expenses, to defend the foreclosure actions that the defendants have commenced in the Connecticut Superior Court; and

   c.    damage to A N D Carting's business reputation and goodwill in the Darien market.

100.    Pursuant to Conn. Gen. Stat. § 35-34, A N D Carting is entitled to injunctive relief in the form of temporary and permanent injunctions prohibiting the defendants from engaging in predatory pricing or otherwise violating the Connecticut Antitrust Act.

## COUNT FOUR
## BREACH OF THE FINOCCHIO NONCOMPETITION
## AGREEMENT

101.    Paragraphs 1 through 82 above are incorporated in this Count Four, with the same force and effect as if fully set forth herein.

102.    The Finocchio Entities, acting in concert through and by Kimberly Finocchio and Cerreta, have breached and will continue to breach the Finocchio Noncompetition Agreement in the Town of Darien by soliciting A N D Carting's Darien customers.

103.    As a result of the aforesaid breach of the Finocchio Noncompetition Agreement, A N D Carting has suffered and will continue to suffer damages, including but not limited to the following:

    a.    A N D Carting has lost and will continue to lose revenues and profits resulting from the loss of customers in Darien;

    b.    The loss of revenues and profits has resulted in A N D Carting's inability to make the Finocchio Note payments and the Rao Note Payments, and has caused A N D Carting to incur the cost of defending itself against the actions brought on the Finocchio Note and the Rao Note;

    c.    As a result of A N D Carting's inability to pay the tipping fees for the Darien Transfer Station, A N D Carting has incurred and will con-

tinue to incur additional expenses to transport its customers' trash to other transfer stations; and

d.   The breach of the Finocchio Noncompetition Agreement has damaged and will continue to damage A N D Carting's business reputation and goodwill in Darien.

104.   Unless the defendants' continued breach of the Finocchio Noncompetition Agreement is temporarily and permanently enjoined, A N D Carting will suffer irreparable harm in that its business will continue to suffer damages and ultimately fail.

<u>**COUNT FIVE**</u>
<u>**BREACH OF THE RAO NONCOMPETITION AGREEMENT**</u>

105.   Paragraphs 1 through 82 above are incorporated in this Count Five, with the same force and effect as if fully set forth herein.

106.   The Finocchio Entities, acting in concert through and by Kimberly Finocchio and Cerreta, have breached and will continue to breach the Rao Noncompetition Agreement in the Town of Darien by soliciting A N D Carting's Darien customers.

107.   As a result of the aforesaid breach of the Rao Noncompetition Agreement, A N D Carting has suffered and will continue to suffer damages, including but not limited to the following:

a.   A N D Carting has lost and will continue to lose revenues and profits resulting from the loss of customers in Darien;

b.      The loss of revenues and profits has resulted in A N D Carting's in-
ability to make the Finocchio Note payments and the Rao Note
Payments, and has caused A N D Carting to incur the cost of de-
fending itself against the actions brought on the Finocchio Note and
the Rao Note;

c.      As a result of A N D Carting's inability to pay the tipping fees for the
Darien Transfer Station, A N D Carting has incurred and will con-
tinue to incur additional expenses to transport its customers' trash
to other transfer stations; and

d.      The breach of the Rao Noncompetition Agreement has damaged
and will continue to damage A N D Carting's business reputation
and goodwill in Darien.

108.    Unless the defendants' continued breach of the Rao Noncompetition
Agreement is temporarily and permanently enjoined, A N D Carting will suffer irrepara-
ble harm in that its business will continue to suffer damages and ultimately fail.

## COUNT SIX
## BREACH OF THE RIGHT OF FIRST REFUSAL

109.    Paragraphs 1 through 82 above are incorporated in this Count Six, with
the same force and effect as if fully set forth herein.

110.    As set forth in paragraphs 42 through 45, Finocchio Carting, Robert Fi-nocchio, Sr., and Thomas Finocchio have conspired to breach the Finocchio Right of First Refusal.

111.    As a result of the breach of the Finocchio Right of First Refusal, A N D Carting has lost the opportunity to expand its business into Greenwich, and has lost the additional revenues and profits that would have resulted from acquiring the Greenwich stops.

112.    A N D Carting has thus been damaged.

## COUNT SEVEN
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND
## FAIR DEALING

113.    Paragraphs 1 through 82 above are incorporated in this Count Seven, with the same force and effect as if fully set forth herein.

114.    The defendants' conduct constitutes a breach of the covenant of good faith and fair dealing, which is implied in the Finocchio Carting Agreement and the T.P. Carting Agreement.

115.    As a result of said breach of the implied covenant of good faith and fair dealing, A N D Carting has been damaged.

## COUNT EIGHT
## BREACH OF THE ARBITRATION AGREEMENTS

116.   Paragraphs 1 through 82 above are incorporated in this Count Eight, with the same force and effect as if fully set forth herein.

117.   As set forth in paragraphs 46 through 52, Robert Finocchio, Sr., acting for himself and for Finocchio Carting, breached the arbitration clause contained in the Finocchio Carting Agreement by refusing to cooperate in the arbitration of the breach of the Right of First Refusal.

118.   In light of the fact that Robert Finocchio, Sr., who has acted and continues to act in concert with and on behalf of the other individual defendants and the Finocchio Entities, whose objectives include the destruction of A N D Carting's business, any attempt to submit the remaining disputes among A N D Carting, Finocchio Carting, T.P. Carting, Robert Finocchio, Sr. and Dana Rao would be futile.

119.   As a result of the breach of the arbitration clauses in the Finocchio Agreement and the T.P. Carting Agreement, A N D Carting has had to incur the cost of defending the foreclosure actions, and the present action, rather than submit such actions to arbitration.

120.   A N D Carting is entitled to recover from the defendants the cost of defending the foreclosures and the cost of prosecuting the present action.

## COUNT NINE
## TORTIOUS INTERFERENCE WITH CONTRACT

121.    Paragraphs 1 through 82 above are incorporated in this Count Nine, with the same force and effect as if fully set forth herein.

122.    The defendants' unlawful solicitation of the A N D Carting's Darien customers, in breach of the Finocchio Noncompetition Agreement and the Rao Noncompetition Agreement, and the defendants' unlawful predatory pricing in the Darien market constitute tortious interference with contracts between A N D Carting and its Darien customers.

123.    As a result of the aforesaid tortious interference with A N D Carting's contracts, A N D Carting has suffered and will continue to suffer damages, including but not limited to the following:

  a.    A N D Carting has lost and will continue to lose revenues and profits resulting from the loss of customers in Darien;

  b.    The loss of revenues and profits has resulted in A N D Carting's inability to make the Finocchio Note payments and the Rao Note Payments, and has caused A N D Carting to incur the cost of defending itself against the actions brought on the Finocchio Note and the Rao Note;

    c.      As a result of A N D Carting's inability to pay the tipping fees for the Darien Transfer Station, A N D Carting has incurred and will continue to incur additional expenses to transport its customers' trash to other transfer stations; and

    d.      The breach of the Rao Noncompetition Agreement has damaged and will continue to damage A N D Carting's business reputation and goodwill in Darien.

124.   Unless the defendants' continued tortious interference with A N D Carting's contracts, A N D Carting will suffer irreparable harm in that its business will continue to suffer damages and ultimately fail.

**COUNT TEN**
**VIOLATION OF THE CONNECTICUT UNFAIR TRADE**
**PRACTICES ACT**

125.   Paragraphs 1 through 82 above are incorporated in this Count Ten, with the same force and effect as if fully set forth herein.

126.   The defendants' conduct constitutes a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq., in that such conduct was immoral, oppressive and unscrupulous, and caused substantial, ascertainable injury and damage to the plaintiff.

_____

**WHEREFORE,** the plaintiff claims preliminary and permanent injunctive relief,

and judgment against the defendants in the amount of $5,000,000.00, as follows:

a.   On Count One, money damages pursuant to Conn. Gen. Stat. § 35-53(a);

b.   On Count One, punitive damages in an amount up to twice the amount of money damages awarded pursuant to Conn. Gen. Stat. § 35-53(a);

c.   On Count One, preliminary and permanent injunctions prohibiting the defendants from violating the Connecticut Trade Secret Act, pursuant to Conn. Gen. Stat. § 35-52;

d.   On Count Two, treble damages, reasonable attorneys' fees, costs and interest, pursuant to 15 U.S.C. § 15;

e.   On Count Two, preliminary and permanent injunctions prohibiting the defendants from violating the federal antitrust laws, pursuant to 15 U.S.C. § 26;

f.   On Count Three, treble damages, reasonable attorneys' fees, costs and interest, pursuant to Conn. Gen. Stat. § 35-35;

g.   On Count Three, preliminary and permanent injunctions prohibiting the defendants from violating the Connecticut Antitrust Act, pursuant to Conn. Gen. Stat. § 35-34;

h.   On Count Four, compensatory damages and reasonable attorneys' fees for breaching the Finocchio Noncompetition Agreement;

i.   On Count Four, preliminary and permanent injunctions prohibiting the defendants from breaching the Finocchio Noncompetition Agreement until October 22, 2014;

j.   On Count Five, compensatory damages and reasonable attorneys' fees for breaching the Rao Noncompetition Agreement;

k.   On Count Five, preliminary and permanent injunctions prohibiting the defendants from breaching the Rao Noncompetition Agreement until October 22, 2014;

l.   On Count Six, compensatory damages and reasonable attorneys fees for damages resulting from the breach of the Right of First Refusal;

m.    On Count Seven, compensatory and punitive damages and rea-
      sonable attorneys' fees for the breach of the implied covenants of
      good faith and fair dealing with respect to the Finocchio Carting
      Agreement and the T.P. Carting Agreement;

n.    On Count Eight, compensatory damages and attorneys' fees for the
      breach of the Arbitration Agreements;

o.    On Count Nine, compensatory and punitive damages, and reason-
      able attorneys' fees for tortious interference with contract;

p.    On Count Ten, treble damages and attorneys pursuant to section
      Conn. Gen. Stat. 42-110g(a), for violation of the Connecticut Unfair
      Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.

q.    Such other and further legal and equitably relief as the Court
      deems just and proper.

THE PLAINTIFF
AND CARTING, **LLC**

By:

Robert F. Maslan, J ., Esq. (ct07919)
MASLAN ASSOCIA ES P.C.
3 Parklands Drive, Suite 207
Darien, CT 06820
Phone 203-656-3800
Facsimile 203-656-1624
rmaslan@maslanlaw.com
Its Attorneys

## VERIFICATION

The undersigned, a member of plaintiff AND Carting, LLC, hereby verifies that

the facts and circumstances set forth in the foregoing Complaint are true, to the best of

my knowledge and belief.

Darlene M. Vento

Subscribed and **sworn** to
before me this  /ˢᵗ  day of
February 2007.

Notary Public
~~Commissioner of the Superior Court~~

My Commission expires

LINDA J. WORMAN
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2011