UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| A N D CARTING, LLC,<br>   Plaintiff,<br><br>v.<br><br>FINOCCHIO BROTHERS, INC., FINOCCHIO BROTHERS CARTING OF GREENWICH, INC., FINOCCHIO BROTHERS CARTING CORP., FINOCCHIO CARTING, LLC, FINOCCHIO DISPOSAL, LLC, FINOCCHIO BROTHERS OF WILTON, LLC, T.P. CARTING, LLC, YOUR NEW HAULER, INC., ROBERT FINOCCHIO, SR., ROBERT FINOCCHIO, JR., THOMAS P. FINOCCHIO, KIMBERLY FINOCCHIO, and DANA FINOCCHIO a/k/a DANA RAO,<br>   Defendants. | 3:07-cv-164 (CFD) |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff A N D Carting, LLC ("A N D Carting") brought this suit against a number of defendants claiming violations of the federal and Connecticut state antitrust laws, violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), and alleging various contractual claims. The defendants have counterclaimed against the plaintiff for engaging in marketing activities that violate the federal and state antitrust laws, as well as CUTPA. Defendants now move for summary judgment on Plaintiff's federal antitrust claims.[1] The defendants further argue that, if the Court grants summary judgment on these federal claims, the Court should decline to exercise

---

[1] There are two separate "sets" of defendants in this case: the "Tom Defendants"—Thomas Finocchio, Finocchio Brothers, Inc., Finocchio Bros. Carting of Greenwich, Inc., Finocchio Bros. Carting Corp., Your New Hauler, Inc., Finocchio Bros. Of Wilton, LLC, and Kimberly Finocchio—and the "Robert Defendants"—T.P. Carting, LLC, Robert Finocchio, Sr., Robert Finocchio, Jr., Dana Finocchio (Rao), Finocchio Carting, LLC, and Finocchio Disposal, LLC. Defendants' arguments, however, are quite similar and will be treated together for the purposes of summary judgment.

-1-

jurisdiction over A N D Carting's remaining claims. For the reasons that follow, the defendants' motions for summary judgment are granted and the Court declines to exercise supplemental jurisdiction over the remaining claims.

## I. Factual Background[2]

A N D Carting is a Connecticut limited liability company in the business of collecting, hauling, and disposing of residential and commercial garbage in Fairfield County, Connecticut. A N D Carting was organized in September 2002 for the purpose of acquiring the assets of Finocchio Carting and T.P. Carting—two garbage collection businesses in the Town of Darien. In exchange for T.P. Carting's trash hauling business (all assets, customer lists, and accounts), A N D Carting paid T.P. Carting a purchase price of $231,000, including a promissory note to T.P. Carting and Dana Rao ("Dana") of $163,427. A N D Carting purchased Finocchio Carting for $1,469,000, including a promissory note in the amount of $875,002. Both sale agreements included a Non-Competition and Non-Disclosure Agreement in which Dana and Robert Finocchio, Sr. ("Robert Sr."), the owner of Finocchio Carting, agreed not to compete with A N D Carting in Darien for ten years.[3]

---

[2] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

[3] The Finocchio Carting Agreement also included a right of first refusal which gave A N D Carting the right to purchase Finocchio Carting's "Greenwich Route" if Finocchio Carting decided to sell the route. The Agreement explicitly stated that the right of first refusal would be "null and void" if the Route was transferred to any or all of Robert Sr.'s children. A N D Carting has asserted a claim in this Court for breach of the right of first refusal; however, there is no allegation that the alleged breach of this right constituted an antitrust violation. Additionally, there is no allegation that a breach of a contractual right such as a right of first refusal creates federal jurisdiction. Finally, Defendants do not move for summary judgment on this claim. Therefore, the Court declines to examine or address the claim regarding the right of first refusal.

At the time of the T.P. Carting and Finocchio Carting sale, Kimberly Finocchio, the daughter of Robert Sr., apparently requested to perform the bookkeeping and billing services for A N D Carting. Kimberly worked for A N D Carting until October 31, 2003. A N D Carting alleges that on or before that date, Kimberly removed customer lists and pricing information from A N D Carting. A N D Carting claims that Kimberly was aware that the customer lists were confidential trade secrets, but Kimberly nonetheless kept an electronic and/or hard copy of these customer lists and pricing information for herself.

Subsequently, in July 2006, Kimberly allegedly began misappropriating the customer lists and pricing information by sending fliers to and telephoning A N D Carting's customers advertising free months of garbage collection services and deeply discounted prices. Fliers were sent to Darien customers and advertisements placed in local Darien newspapers soliciting customers on behalf of "Your New Hauler" and "Finocchio Bros. Carting," companies owned and operated by Thomas Finocchio. The prices offered by these companies apparently ranged from $30 to $42 per customer per month, while A N D Carting's prices were approximately $50 to $55 per customer per month.

In July 2006, A N D Carting had approximately 1650 customers in the Town of Darien, the only Town in which A N D Carting operated during that time.[4] A N D Carting claims that it has lost approximately 175 customers due to the defendants' discounted rates. A N D Carting also alleges that, in response to the prices offered by the "Tom Defendants" it has been forced to discount its prices and has lost so much revenue that it cannot meet its financial obligations.

A N D Carting claims that the defendants violated Section 2 of the Sherman Act, 15

---

[4] It is undisputed that the Town of Darien has approximately 7020 households.

U.S.C. § 2, by engaging in predatory pricing.[5] The defendants move for summary judgment on the basis that the defendants have not created a monopoly and have not engaged in acts that "threaten monopolization." Specifically, the defendants argue that A N D Carting cannot demonstrate as a matter of law that the defendants priced their services below the defendants' costs or that the defendants have a "dangerous probability" of recouping their investment in below cost pricing.

## II.    Discussion

A.    Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

---

[5] In Paragraph 1 of A N D Carting's Complaint, A N D Carting states that "[t]his action arises under the antitrust laws of the United States, more particularly Sections 1 and 2 of the Sherman Act." The remainder of the Complaint, however, makes no mention of § 1 of the Sherman Act. Moreover, A N D Carting does not specifically address how any of the defendants' actions violate § 1, nor does A N D argue in its opposition papers that a material issue of fact exists regarding a § 1 violation. Therefore, the Court finds that the plaintiff cannot state a claim as a matter of law for a violation of § 1 of the Sherman Act and summary judgment is granted on the § 1 claim. See Marrow v. Amato, Civil No. 3:07cv401 (PCD), slip op. 2009 WL 350601, at *7 (D.Conn. Feb. 12, 2009) (holding that when a party fails to address an opposing party's summary judgment argument or address the claim in any manner, that claim is deemed abandoned and summary judgment is granted to the moving party on that claim).

the nonmoving party." Anderson, 477 U.S. at 248.

When examining a motion for summary judgment the Court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. Patterson v. County of Oneida, NY, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, a party may not create a genuine issue of material fact by resting on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

B.    Claimed Violation of Sherman Act, Section 2

Section 2 of the Sherman Act declares that monopolizing, attempts to monopolize or combining or conspiring with any other person to monopolize is illegal. 15 U.S.C. § 2. Here, A N D Carting argues that the defendants violated § 2 by engaging in predatory pricing.

"In a typical predatory-pricing scheme, the predator reduces the sale price of its product . . . to below cost, hoping to drive competitors out of business. Then, with competition vanquished, the predator raises . . . prices to a supracompetitive level." Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc., 549 U.S. 312, 318 (2007). Predatory pricing schemes are not easy to establish and are rarely successful. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 226 (1993).[6] To recover on a claim of predatory pricing, the plaintiff must satisfy a two-pronged test. Weyerhaeuser, 549 U.S. at 318. First, the

---

[6] Although the facts of Brooke Group arose under the Robinson-Patman Act, the prerequisites for succeeding on a claim of predatory pricing are the same under the Sherman Act. Brooke Group, 509 U.S. at 222.

plaintiff must establish that the rival's prices are below an appropriate measure of the rival's costs. Id. The Second Circuit has deemed the "anticipated average variable cost" of the seller to be the appropriate measure of a rival's costs. Irvin Indus., Inc. v. Goodyear Aerospace Corp., 974 F.2d 241, 245 (2d Cir. 1992); see also Creative Copier Servs. v. Xerox Corp., 344 F. Supp. 2d 858, 867 (D.Conn. 2004). The Court in Weyerhaeuser noted that it was wary of allowing recovery for "above-cost price cutting" because that could chill legitimate price cutting, a practice which directly benefits consumers. Weyerhaeuser, 549 U.S. at 319; see also Brooke Group Ltd., 509 U.S. at 223 ("[W]e have rejected elsewhere the notion that above-cost prices that are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws.").

Second, the plaintiff must demonstrate that the competitor has a "dangerous probability" of recovering its investment in the below-cost prices. Weyerhaeuser, 549 U.S. at 318–19. "For recoupment to occur, below-cost pricing must be capable, as a threshold matter, of producing the intended effects on the firm's rivals, whether driving them from the market, or . . . causing them to raise their prices to supracompetitive levels within a disciplined oligopoly." Brooke Group, 509 U.S. at 225. Even if the actions of the predator do not succeed in driving the victim from the market, the Court must still ask whether the below-cost pricing would likely injure competition as a whole in the relevant market—specifically, whether the plaintiff can demonstrate that the alleged predatory scheme would cause a rise in prices above a competitive level sufficient to compensate for the predation. Id.

The plaintiff does not satisfy its burden simply by producing evidence of below-cost pricing alone. Id. at 226. To determine whether recoupment is likely to occur, the Court must

estimate and examine the cost, extent, and duration of the alleged predation, the relative financial strength of the predator and victim (and their respective incentives), as well as the structure and conditions of the relevant market. Id. at 225–26. "[T]he success of any predatory scheme depends on maintaining monopoly power for long enough both to recoup the predator's losses and to harvest some additional gain." Id. at 231–32. "In certain situations—for example, where the market is highly diffuse and competitive, or where new entry is easy, or the defendant lacks adequate excess capacity to absorb the market shares of his rivals and cannot quickly create or purchase new capacity—summary disposition of the case is appropriate." Id. at 226; see Creative Copier Servs. v. Xerox Corp., 344 F. Supp. 2d 858 (D.Conn. 2004) (granting motion to dismiss predatory pricing claim because plaintiff offered only vague allegations that Xerox hoped to have a monopoly in the service market).

Defendants argue that A N D Carting has not provided any evidence that the defendants are pricing their services below the defendants' average variable costs. A N D Carting asserts that in July 2006, the average variable cost for private trash haulers in Darien was roughly $44.78 per customer. This calculation is based on an estimate by A N D Carting's owner and operator, Darlene Vento, who asserted in her affidavit that this calculation is based on her twenty-one years of experience in the trash hauling business. A N D Carting asserts that the "Tom Defendants" have been soliciting customers of A N D Carting by mailing fliers offering two or more months of free service and monthly services ranging from $30 to $42 per month. Assuming for the purposes of summary judgment that A N D Carting has correctly estimated the defendants' average variable cost, the "Tom Defendants" would be pricing below average

variable cost.⁷

A N D Carting, however, cannot satisfy the second prong of the test for predatory pricing—namely, a "dangerous probability" of recoupment. In its opposition papers, A N D Carting does not address whether the defendants can likely recoup their investment in below cost pricing by instituting supracompetitive prices. Indeed, A N D Carting has not put forward any argument or evidence that the defendants would be able to raise its prices high enough to recoup its losses from predatory pricing. Nonetheless, the Court still construes the facts and makes all reasonable inferences in the light most favorable to the plaintiff.

In its complaint, A N D Carting states that it believes the defendants are able to absorb the losses from predatory pricing because of the substantial market share of the "Finocchio Entities" in Fairfield and Westchester Counties and in New York City. A N D Carting, however, offers no evidence aside from this speculation that the defendants are charging supracompetitive prices or higher rates in those counties. Cf. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 591 (1986) ("[T]here is nothing to suggest any relationship between petitioners' profits in Japan and the amount petitioners could expect to gain from a conspiracy to monopolize the American market."). Additionally, a copy of the Darien Yellow Pages attached to Defendants' motion for summary judgment indicates that there are at least twenty-five other garbage removal services in the Darien region. A N D Carting has not shown that the defendants will be able to either put all of these other services out of business—creating a monopoly—or

---

⁷ A N D Carting does not argue or allege any facts demonstrating that the so-called "Robert Defendants" were involved in this predatory pricing scheme. The only facts alleged regarding the "Robert Defendants" deal with the right of first refusal and, as discussed above, there is no argument that the breach of this right of first refusal constitutes an antitrust violation.

will be able to create an oligopoly structure where supracompetitive prices naturally occur. Thus, the situation here is distinguishable from the facts in Irvin Industries, Inc. v. Goodyear Aerospace Corp., 974 F.2d 241 (2d Cir. 1994). There, Goodyear and Irvin Industries were the only two manufacturers of the product and the government was the only purchaser; thus, by predatorily pricing, Goodyear would be able to force its only competitor (Irvin) out of the market and be able to recoup its loss because it would become the only manufacturer of the product. See id.

At oral argument on this motion, A N D Carting contended that not enough time has passed for supracompetitive prices to emerge. However, a plaintiff in a predatory pricing case need not demonstrate that supracompetitive prices *have* resulted, but rather, that there is a "dangerous *probability*" that the defendant will be able to recoup its low prices. Brooke Group, 509 U.S. at 222 (emphasis added). There is no evidence that this probability exists in this case. See Creative Copier Servs., 344 F. Supp. 2d at 868 (holding that "vague—and insufficient—allegations that Xerox hoped to have a monopoly in the service market" are insufficient to survive a motion to dismiss); see also Synergetics USA, Inc. v. Alcon Labs., Inc., No. 08 CIV. 3669(DLC), 2009 WL 435299, at *5 (S.D.N.Y. Feb.23, 2009). Therefore, because there is no evidence that the defendants could recoup any losses from the allegedly predatory pricing, the defendants' motion for summary judgment is granted on plaintiff's § 2 claim.

C.   No Other Federal Claims

Without a violation of the Sherman Act, A N D Carting no longer has a federal cause of action pending before this Court.[8] Under 28 U.S.C. § 1367(c)(3), a district court may decline to

---

[8] Although A N D Carting also cites provisions of the Clayton Act in its Complaint, these provisions solely discuss damages available for antitrust violations. See 15 U.S.C. §§ 15 and 26.

exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." In exercising this discretion the Court must balance the "traditional values of judicial economy, convenience, fairness, and comity." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The defendants ask the Court to dismiss the remaining state claims without prejudice. Defendants Robert Sr. and Dana currently have an action pending in the Connecticut Superior Court regarding A N D Carting's alleged failure to pay the balance of the promissory notes given to the defendants as part of the purchase of T.P. Carting and Finocchio Carting. The facts alleged by A N D Carting in its complaint and in its opposition papers to defendants' motion for summary judgment indicate that the facts surrounding the defendants' state court collection action are directly related to and intertwined with the facts that serve as the basis for A N D Carting's state law claims before this Court. The defendants assert that the state case has basically been "on hold" during the pendency of this litigation. A N D Carting has not objected to a dismissal of their state law claims without prejudice, asking either for the Court to decline to exercise jurisdiction (allowing the case to go forward in state court) or to exercise supplemental jurisdiction over the remaining claims.

The Court declines to exercise supplemental jurisdiction over the remaining state claims.

Although this Court has invested substantial time in resolving discovery disputes[9] and deciding two dispositive motions, both motions dealt solely with the plaintiff's federal antitrust claims. Additionally, the factors of judicial economy, convenience, fairness, and comity are weighted toward allowing these state claims to be tried in Connecticut Superior Court with the closely related facts of Robert Sr. and Dana's claim. Therefore, the Court dismisses the remaining claims without prejudice.

## III.    Conclusion

Accordingly, the defendants' motions for summary judgment [Dkt. # 82 and # 88] are GRANTED. The Court declines to exercise supplemental jurisdiction over the remaining claims which are DISMISSED WITHOUT PREJUDICE. The Clerk is ordered to close the case.

SO ORDERED this   31st   day of August 2010, at Hartford, Connecticut.

/s/Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[9] The Court also notes that the discovery deadlines have passed; however, the discovery is likely useful to the parties if the claims were brought in Connecticut Superior Court.